## J. A. WITHERS et al. v. BOARD OF COUNTY COMMISSIONERS OF HARNETT COUNTY et al.

(Filed 23 January, 1929.)

**1. Elections—Conduct of Elections—Secret Ballot—Constitutional Law.**

The provisions of Article VI, section 6, of the State Constitution that all elections by the people shall be by ballot and all elections by the General Assembly shall be *viva voce* implies that in elections by the people the ballot shall be a secret one.

**2. Same—Ballot Boxes.**

By providing a ballot box for an election, with two separate slots in which the ballots are to be deposited, each plainly marked so as to indicate whether for or against the measure, in the presence of those favoring or opposing the measure, the secrecy of the ballot is not maintained in accordance with the mandate of our State Constitution, Art. VI, sec. 6, though the box itself has no partition to separate the ballots which are commingled for the count.

**3. Same—Rights of Voter.**

The privacy of voting at an election of the people is a personal privilege given to each voter.

**4. Same—Waiver of Right to Secret Ballot.**

A voter at an election does not waive his constitutional right to a secret ballot, Const., Art. VI, sec. 6, by not protesting, unless he has been made aware of his rights under the facts and circumstances of the balloting.

**5. Same—Undue Influence—Intimidation.**

It is not necessary to show undue influence or intimidation for the courts to declare an election void when the voters have been deprived of their right to a secret ballot. Art. VI, sec. 6.

**6. Appeal and Error—Review—Harmless Error.**

When on appeal the decision of the Supreme Court makes the action of the judge in granting a restraining order immaterial, it becomes unnecessary for the court to discuss error alleged in this respect.

CIVIL ACTION, before *Daniels, J.,* at August Term, 1928, of HARNETT.

The plaintiffs are taxpayers and residents of what is known as Harnett County School District No. 80, and the defendants are the duly elected, qualified and acting Board of County Commissioners of Harnett County.

A special school election was held for the purpose of levying a tax in said district. There were six hundred and fifteen registered voters, and of that number three hundred and sixty-one votes were cast in favor of local tax, and eighty-three votes were cast against local tax. At the hearing three hundred and forty-two registered voters signed an affidavit to the effect that all ballots for said election were cast freely, voluntarily,

and openly, and further, that all of said affiants were "thoroughly satisfied with the manner in which said election was conducted."

Thereupon, the following judgment was entered:

"This cause being heard at Smithfield, N. C., on 11 August, 1928, and plaintiffs, for the purpose of this hearing, having waived their objections other than that a ballot box was held by the election officer, having two slots, one marked 'For Special Tax' and one 'Against Special Tax,' and that no opportunity was offered voters to cast a vote in any box except the one so marked, and the court finding as facts that such a box was so founded and used; and no other opportunity was offered voters to vote except them; and the court being of the opinion that said election is therefore void, it is ordered that the restraining order heretofore granted be continued to the hearing."

From the foregoing judgment the defendants appeal.

*Hoyle & Hoyle for plaintiffs.*
*I. R. Williams, N. McKoy Salmon and Charles Ross for defendants.*

BROGDEN, J.  The question of law for decision is whether or not the ballot box provided for the election and the casting of votes therein was in violation of the Constitution of North Carolina.

The ballot box had no partition, and all votes, whether placed in the slot labeled "For Special Tax," or in the slot labeled "Against Special Tax," were therefore deposited in the same ballot box, and all said votes were properly counted and canvassed.  Article VI, section 6, of the Constitution of North Carolina, provides that "all elections by the people shall be by ballot, and all elections by the General Assembly shall be *viva voce.*"  The overwhelming weight of judicial authority is to the effect that a vote by ballot implies a secret ballot.  The general principle is thus stated in 20 C. J., p. 175: "The constitutional provisions that all elections shall be 'by ballot' imply secrecy of voting, as distinguished from *viva voce* voting; and in some jurisdictions secrecy of the ballot is regarded as a rule of public policy that cannot be waived."  9 R. C. L., 1046-47.

This Court has adopted the prevailing construction of the constitutional provision in the case of *Jenkins v. Board of Elections,* 180 N. C., 169.  That case involved the constitutionality of the absentee voters law.  *Brown, J.,* writing for the Court, said: "The plaintiff contends that the statute violates the provision of our Constitution which provides that elections by the people shall be by ballot, arguing that this means a secret ballot in all elections.  We admit that voting by ballot, as distinguished from *viva voce* voting, means a secret voting, and that the elector in casting his ballot has the right to put it in the box and to

refuse to disclose for whom he voted, and that he cannot be compelled to do so. But this privilege of voting a secret ballot has been held to be entirely a personal one. The provision has been generally adopted in this country for the protection of the voter, and for the preservation of his independence, in the exercise of this most important franchise." *Boyer v. Teague,* 106 N. C., 625, 11 S. E., 665.

The South Carolina Court in *State ex rel. Birchmore v. State Board of Canvassers,* 78 S. E., 451, declared: "Therefore, if a general election is held *viva voce* or there are such other irregularities as practically amount to such voting, and the electors are deprived of their constitutional right to secrecy in casting their ballots, the election is void."

The registrar filed an affidavit containing the following paragraph: "That at the said election there was a box prepared for the voters to cast their ballots in, and in the said box there were two openings, or slots, in the lid, one of which was designated as a place for those voting in favor of the proposition submitted to place their votes and the other for those against the proposition to place their ballots, but that all of the said ballots went into the same box; that this arrangement was not made for the purpose of trying to influence any one to vote otherwise than he or she would have and did vote, but for convenience of those who were making an effort to secure a majority of the votes for the election." This paragraph from the affidavit discloses the purpose of providing two slots in the ballot box. Those who were interested in carrying the election for the special tax were desirous of knowing or ascertaining how strong the opposition was to the proposal, in order that they might send out for reinforcement if the fight became too hot or the result too doubtful. Undoubtedly, this was a laudable proposition, and a worthy undertaking in securing better school facilities for the community, but the constitutional provision was designed and intended to protect every voter, however humble or timid, from being compelled to run the gauntlet of publicity in expressing at the polls his free and untrammeled judgment upon the question at issue. Furthermore, the constitutional provision was intended and designed for the protection of the voter himself in drawing about him, if he so desired, the impenetrable veil of secrecy. The franchise has been won at an enormous cost, and the exercise thereof should be free from every extraneous influence and impelled only by the best intelligence and best judgment of the individual who seeks in this manner to express his will upon the questions affecting his welfare.

In the case at bar there was no evidence of undue influence or intimidation, but there was a denial of that secrecy guaranteed by the Constitution, and the election ought not to stand.

The defendants, however, contend that all votes were counted irrespective of the slot in which they were placed, and that, as no protest was made by any voter, the constitutional privilege was thereby waived.

Some of the courts hold that such waiver would be contrary to public policy, and moreover that a constitutional provision cannot be waived except by the voluntary act of the voter himself. However, before a voter can be charged with a waiver of his constitutional rights he must have full knowledge of those rights and of all the surrounding facts which will enable him to take effectual action to protect himself. The record does not disclose that voters were advised that they could place their ballots in either slot, or that there was no partition in the ballot box. When a voter went to the box to cast his ballot the marking upon the box plainly indicated that if he desired his ballot to be counted for the proposal it should be placed in one slot, and if he desired it to be cast against the proposal, it should be placed in another slot. In the absence of such explanation and of such knowledge, we cannot hold that the principle of waiver or estoppel applies in this case.

A question was raised as to the power of Judge Daniels to issue a restraining order. We do not discuss this phase of the case because the conclusion which we have reached upon the question of the validity of the election renders such discussion unnecessary.

Affirmed.